IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TAYLORMADE EYECARE & OPTICAL, a Tennessee company; and DR. CHRISTY TAYLOR, an individual,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>SOLUTIONREACH, INC., a Utah corporation,<br><br>　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00176<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

Before the court is the Defendant's motion to dismiss. (ECF No. 27.) For the reasons stated below, the court grants the motion in part and denies the motion in part.

**BACKGROUND**

Plaintiff Taylormade Eyecare & Optical (Taylormade) is a for-profit medical practice located in Tennessee. (Am. Compl., ECF No. 24 at ¶ 1.) Plaintiff Dr. Christy Taylor is an optometrist. (Id. ¶ 2.) Defendant Solutionreach, Inc. (Solutionreach) is a "Utah-based software company that provides a patient retention and communication platform for medical, dental, and vision healthcare providers." (ECF No. 27 at 10.)

In 2013, representatives from Solutionreach reached out to the Plaintiffs to sell their software platform. (Am. Compl. ¶ 7.) The parties then entered into an agreement (the Services Agreement) in which Solutionreach agreed to provide several services to Taylormade. (See Services Agreement, ECF No. 24-1 at 2–3.) For the Plaintiffs, the most important service was

the patient recall software that completes annual recall reminders for their patients.  (Am. Compl. ¶ 14.)  This software was advertised to yield more than $120,000 in recall revenue annually. (Id. ¶ 9.)

The Services Agreement renewed automatically.[1]  (Id. ¶ 12; ECF No. 24-1 at 2.) Taylormade agreed to pay a one-time activation fee of $399 and a monthly license fee of $379. (Services Agreement § 2, ECF No. 24-1 at 2.)  At each renewal period, Solutionreach "re-affirmed that the software was renewed, functional, and operating pursuant to the parties' agreement."  (Am. Compl. ¶ 23.)  The parties extended the Services Agreement in 2017 (the 2017 Agreement) to include add-ons for additional features such as Solutionreach Smart Reviews and Solutionreach Conversations.  (Id. ¶ 15; 2017 Agreement, ECF No. 24-1 at 4–6.)  The Services Agreement was extended again in 2019 (the 2019 Agreement) to include Solutionreach Intake.  (Am. Compl. ¶ 16; 2019 Agreement, ECF No. 24-1 at 7–8.)  The 2017 Agreement did not increase the monthly fees, but the 2019 Agreement added a monthly fee of $79. (2017 Agreement § 2, ECF No. 24-1 at 4; 2019 Agreement § 2, ECF No. 24-1 at 7.)

The End-User License Agreement, which is incorporated into the Services Agreement, contains a limitation of warranty provision and a limitation of liability provision.  The limitation of warranty provision states:

> THE SERVICES ARE PROVIDED ON AN "AS IS" BASIS, AND YOUR USE OF THE SERVICES IS AT YOUR OWN RISK.  WE WILL USE COMMERCIALLY REASONABLE EFFORTS TO MAINTAIN ACCEPTABLE PERFORMANCE OF THE SERVICES.  HOWEVER, WE PROVIDE NO WARRANTIES WHATSOEVER AND WE DO NOT MAKE, AND HEREBY DISCLAIM, ANY AND ALL EXPRESS AND IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT AND ANY WARRANTIES ARISING FROM COURSE

---

[1] The Services Agreement stated that the contract would renew automatically 25 months after April 4, 2013, and every year thereafter.  (See Services Agreement, ECF No. 24-1 at 2.)

OF DEALING, USAGE OR TRADE PRACTICE.  WE DO NOT MAKE ANY
REPRESENTATIONS REGARDING THE USE OR THE RESULTS OF THE
USE OF THE SERVICES IN TERMS OF ACCURACY, RELIABILITY, OR
OTHERWISE….

(End-User License Agreement § 5, ECF No. 24-1 at 3.)[2]  And the limitation of liability provision

states:

OUR SOLE AND MAXIMUM LIABILITY, AND YOUR SOLE AND
EXCLUSIVE REMEDY FOR ANY CLAIMS WHATSOEVER, WHETHER
BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY, TORT,
INCLUDING NEGLIGENCE, PRODUCT LIABILITY OR OTHERWISE,
SHALL BE LIMITED TO THE AMOUNT YOU PAID FOR THE SERVICES
WITHIN THE THREE (3) MONTHS IMMEDIATELY PRECEDING A CLAIM
IN WHICH WE ARE LIABLE TO YOU FOR SUCH CLAIM.

Id.

In 2023, the Plaintiffs noticed that the patient recall software was not functioning

properly.  (Am. Compl. ¶ 25.)  The Plaintiffs contacted Solutionreach, and Solutionreach assured

them that the glitch had been fixed.  (Id. ¶ 26–27.)  Solutionreach eventually confirmed that the

patient recall software had not worked properly since the beginning of the Services Agreement.

(Id. ¶ 29.)

The Plaintiffs originally filed this case in state court in Tennessee, but the case was

dismissed for improper venue because the forum selection clause in the End-User License

Agreement designates Utah as the exclusive forum for claims regarding the enforcement of the

agreement between the parties.  Taylormade Eyecare & Optical v. Solutionreach, Inc., No. 23CV-

52769, slip op. (Tenn. Ch. Ct. Williamson Cnty. Mar. 14, 2024).  The Plaintiffs filed their

original complaint in this court on March 7, 2025 (ECF No. 1), and an Amended Complaint on

---

[2] The End-User License Agreement is similarly incorporated into the 2017 Agreement and the
2019 Agreement.  (2017 Agreement § 5, ECF No. 24-1 at 4; 2019 Agreement § 5, ECF No. 24-1
at 7.)

June 30, 2025 (ECF No. 24).  On July 29, 2025, the Defendant filed the motion to dismiss that is currently pending.  (ECF No. 27.)

## LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must allege sufficient facts 'to state a claim to relief that is plausible on its face.'"  Strauss v. Angie's List, Inc., 951 F.3d 1263, 1266 (10th Cir. 2020) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A Rule 12(b)(6) motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations."  Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006), cert. denied, 549 U.S. 1209 (2007) (quoting Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976)).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's ... complaint alone is legally sufficient to state a claim for which relief may be granted.  We accept all well-pled factual allegations as true and view these allegations in the light most favorable to the nonmoving party."  Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010) (citation modified).

## ANALYSIS

### I.      The economic loss rule bars recovery of the Plaintiffs' tort claims.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."  SME Indus., Inc. v. Thompson, Ventulett,

Stainback & Assocs., Inc., 28 P.3d 669, 680 (Utah 2001) (citation omitted).  The rule "prevents recovery of economic damages under a theory of tort liability when a contract covers the subject matter of the dispute."  Reighard v. Yates, 285 P.3d 1168, 1174 (Utah 2012).

Whether the economic loss rules bar a claim depends on "whether a duty exists independent of any contractual obligations between the parties."  Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC, 221 P.3d 234, 244 (Utah 2009) (citation omitted).  The economic loss rule does not prohibit claims based on independent legal duties, but "[i]f the tort alleges a breach of a duty that the contract itself imposes, then the claim is barred; the plaintiff can sue only for contract-based remedies."  KTM Health Care Inc. v. SG Nursing Home LLC, 436 P.3d 151, 170 (Utah Ct. App. 2018) (citation omitted).

A.      Negligent Misrepresentation and Fraud

The Plaintiffs' claim for negligent misrepresentation centers on the Defendant's representations regarding "the software's configuration, operationality, and functionality."  (Am. Compl. ¶ 49.)  Notably, the Plaintiffs' claims for negligent misrepresentation and breach of contract stem from the same facts and conduct.  But the Plaintiffs argue that their claim arises out of an independent duty, namely the "common-law duty to disclose all material facts necessary to prevent [an affirmative] statement from being misleading."  (ECF No. 34 at 11 (quoting Shree Ganesh, LLC v. Weston Logan, Inc., 491 P.3d 885, 893 (Utah 2021)).  In particular, the Plaintiffs allege that, without being required to do so under the Services Agreement, a representative from the Defendant reached out to the Plaintiffs after the installation and at the renewal periods to inform them that the software was renewed and functioning properly.  (ECF No. 34 at 11.)

The alleged duty is not independent from the contract.  The End-User License Agreement contains a warranty provision stating:

> THE SERVICES ARE PROVIDED ON AN "AS IS" BASIS … WE WILL USE COMMERCIALLY REASONABLE EFFORTS TO MAINTAIN ACCEPTABLE PERFORMANCE OF THE SERVICES.  HOWEVER, WE PROVIDE NO WARRANTIES WHATSOEVER AND WE DO NOT MAKE, AND HEREBY DISCLAIM, ANY AND ALL EXPRESS AND IMPLIED WARRANTIES … WE DO NOT MAKE ANY REPRESENTATIONS REGARDING THE USE OR THE RESULTS OF THE USE OF THE SERVICES IN TERMS OF ACCURACY, RELIABILITY, OR OTHERWISE ….

(End-User License Agreement § 5, ECF No. 24-1 at 3.)  This provision covers the Defendant's representations regarding the proper operation of the software and the Defendant's related efforts.  Any statements from the Defendant on this same subject overlap with the contract and cannot give rise to an independent tort duty.  See Reighard, 285 P.3d at 1177–78 (holding that several tort claims, including negligent misrepresentation, were barred by the economic loss rule since the home-sale contract at issue contained provisions governing disclosures and warranties and the duties under tort and contract directly overlapped).  Accordingly, the Plaintiffs' negligent misrepresentation claim is barred by the economic loss rule.

The Plaintiffs' fraudulent misrepresentation and fraud by nondisclosure claims are similarly disallowed.  The Plaintiffs' claims for fraudulent misrepresentation and fraud by nondisclosure focus on the Defendant's representations regarding the operation of the software, a topic explicitly governed by the contract.  (See Am. Compl. ¶¶ 33, 41; End-User License Agreement § 5, ECF No. 24-1 at 3.)  Accordingly, these claims are barred by the economic loss rule.  See HealthBanc Int'l, LLC v. Synergy Worldwide, Inc., 435 P.3d 193, 198 (Utah 2018). ("[T]he economic loss rule applies to fraudulent inducement claims that overlap completely with a breach of contract claim.").

6

## B. Negligence

The Plaintiffs' negligence claim is barred by the economic loss rule because the duty that the Plaintiffs claim the Defendant breached is not independent from the contract. The Plaintiffs allege that the Defendant was negligent because it breached its duty to ensure the proper configuration and operation of the software. (Am. Compl. ¶¶ 75–77.) But this duty plainly overlaps with the subject matter of the Services Agreement. Indeed, the Plaintiffs also bring a breach of contract claim alleging that the Defendant failed to properly configure the software and ensure its function. (Id. ¶ 63.) "Under the economic loss doctrine, a plaintiff cannot ordinarily recover economic damages for negligence when the subject matter is covered by a contract." Donner v. Nicklaus, 778 F.3d 857, 872 (10th Cir. 2015). Accordingly, the Plaintiffs' negligence claim is barred.

While the Plaintiffs do not separately allege gross negligence, the court may still consider whether the alleged facts are sufficient for such a claim. See Blaisdell v. Dentrix Dental Sys., Inc., 284 P.3d 616, 621 (Utah 2012) (considering a gross negligence claim based on allegations in the complaint even when the complaint "does not separately caption a cause of action for gross negligence"). "In Utah, gross negligence is 'the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result.'" Penunuri v. Sundance Partners, Ltd., 423 P.3d 1150, 1159 (Utah 2017) (quoting Blaisdell, 284 P.3d at 621). The Utah Supreme Court has repeatedly distinguished the "failure to observe even slight care" constituting gross negligence from the "failure to observe due care" generally connoting ordinary negligence. Ipsen v. Diamond Tree Experts, Inc., 466 P.3d 190, 196 (Utah 2020) (quoting Bingham v. Roosevelt City Corp., P.3d 730, 742 (Utah 2010)).

7

The alleged decade of failing to ensure the proper function of the software is adequate for the court to consider gross negligence.  But for the same reasons discussed regarding the Plaintiffs' claim for ordinary negligence, the Plaintiffs' gross negligence claim is also barred by the economic loss rule.  See  Xat.com Ltd. v. Hosting Servs., Inc., No. 1:16-cv-00092-PMW, 2017 WL 449652, at *3 (D. Utah Feb. 2, 2017) ("[The Plaintiff's] gross negligence claim and the damages associated with it are bargained for and governed by the [contract].  Accordingly, the economic loss rule precludes [the Plaintiff] from recovering in tort what it can recover in contract.").  While the Plaintiffs' tort claims are barred by the economic loss rule, the Plaintiffs can still seek recovery through contract law.

## II.     The Plaintiffs have adequately alleged breach of contract.

### A.     Breach of Contract

"The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." Daz Mgmt., LLC v. Honnen Equip. Co., 508 P.3d 84, 91 n.26 (Utah 2022) (quoting Richards v. Cook, 314 P.3d 1040, 1043 (Utah Ct. App. 2013)).

The Plaintiffs have alleged facts satisfying these elements.  Indeed, the Defendant does not dispute that the Plaintiffs have adequately alleged a breach of contract claim but instead argues that the amount the Plaintiffs could recover under the contract is capped by the limitation of liability provision.  (ECF No. 27 at 26–29.)  While the limitation of liability provision is relevant to the Defendant's arguments regarding jurisdiction that the court discusses below, this limitation does not provide grounds for dismissing the Plaintiffs' breach of contract claim.

**B.       Rescission of the Contract**

The Utah Court of Appeals recently clarified that rescission of a contract is sometimes available as an alternative to enforcement in the case of material breach.  Young H2ORE LLC v. J&M Transmission LLC, 543 P.3d 1264, 1270–74 (Utah Ct. App. 2024).  In so doing, the court endorsed the approach laid out in the Restatement (Third) of Restitution and Unjust Enrichment (Restatement), under which "a party may—sometimes and under certain circumstances—be entitled to rescission as a remedy for the other party's material breach, even if that party might have an otherwise-adequate remedy at law."  Id. (citing Restatement §§ 37, 54 (Am. L. Inst. 2011)).

The Restatement approach lists several factors courts consider in determining whether a party is entitled to rescission of an agreement rather than damages for breach.  Id. at 1274.  Among other things, these factors include 1) "the extent to which the parties can be restored to their pre-settlement positions," 2) "whether any exception to the status quo requirement applies,"[3] and 3) "whether the interests of justice would be served" by rescission rather than enforcement.  Id.

While the Plaintiffs have not expressly asked the court to rescind the Services Agreement and other associated agreements because of material breach, the Plaintiffs implicitly seek this remedy.  In their breach of contract claim, the Plaintiffs allege that they performed under the Services Agreement and other associated agreements but never received the bargained-for benefits because of the Defendant's breach.  (Am. Compl. ¶¶ 60–64.)  And the Plaintiffs seek a declaratory judgment voiding the Services Agreement and other associated agreements.  (Id.

---

[3] See Restatement § 54(3)(a), (b).

9

¶ 56.)  The court accordingly finds that it is appropriate to consider whether rescission is appropriate in this case.

As a preliminary matter, the court concludes that the Plaintiffs have sufficiently alleged material breach.  Under Utah law, "[c]ertainly a failure of performance which defeats the very object of the contract or is of such prime importance that the contract would not have been made if default in that particular had been contemplated is a material failure."  Cross v. Olsen, 303 P.3d 1030, 1035 (Utah Ct. App. 2013) (citation omitted).  Here, the Plaintiffs allege that the patient recall software, which they considered "[t]he most important feature," did not function properly at any point during the decade-long lifespan of the Services Agreement.  (Am. Compl. ¶¶ 14, 29.)  The court finds that these facts are sufficient to allege a material breach.

Turning now to the factors guiding the court's analysis of whether rescission is appropriate, the court finds that it is practical for the parties to be restored to the status quo ante. It is not yet clear what value, if any, the Plaintiffs obtained from the Services Agreement.  While the Plaintiffs allege that the patient recall software was not functioning properly at any point during the Services Agreement, id., no information has been provided about whether the Plaintiffs received any benefit from add-on features including Solutionreach Smart Reviews, Solutionreach Conversations, and Solutionreach Intake.  (Id. ¶¶ 15–16.)  Although the amount of any potential benefit to the Plaintiffs is currently unknown, there is no reason at this stage to doubt the parties' abilities to "restore[] the property received from the other" and "account[] for additional benefits …."  Restatement § 54 (2)(a), (b).

Also the interests of justice weigh in favor of rescission.  This is especially true if the Plaintiffs did not receive any benefit from the bargain, in which case the Restatement suggests that rescission would be both a just and efficient remedy:

10

> Even when a plaintiff seeks rescission as an alternative to damages for breach of a valid and enforceable contract, there are certain simplified situations in which the potential advantages of rescission over damages—in terms of fairness to the plaintiff as well as remedial efficiency—appear so evident that a plaintiff is uniformly permitted to pursue either remedy.  Such cases typically involve breach or repudiation by a defendant who has obtained the plaintiff's performance without tendering any return.

Id. § 54 cmt. b.  But even if the Plaintiffs received only a minimal benefit from the Services Agreement, this line of reasoning could still prevail.  And the court finds that the risk of prejudice to the Defendant from rescinding the contract is low, as the Defendant would lose "only the benefit of the bargain."  Id. § 54 cmt. c.

Moreover, considering "remedial economy," id. § 54 cmt. e, the court finds that there are reasons to prefer rescission to enforcement.  "In a case of rescission for breach … the court must be persuaded that the advantages of rescission as an alternative to enforcement outweigh its costs in terms of contractual instability and potential forfeiture."  Id. § 37 cmt. a (citing id. § 54 cmts. b–e).  In this case, it would be difficult to accurately calculate the benefits the Plaintiff would have received from a decade of the software functioning properly.  Accordingly, the court is persuaded that the advantages of rescission as an alternative to enforcement outweigh its costs.

### III.    The Plaintiffs have not adequately alleged unjust enrichment, quantum meruit, or breach of implied contract/quasi-contract.

The Plaintiffs' claims for unjust enrichment, quantum meruit, and breach of implied contract/quasi-contract all fail for the same reason: there is a valid contract governing the subject matter of these claims.  Utah courts have routinely disallowed recovery under these theories when recovery could be pursued under a breach of contract theory.  See, e.g., U.S. Fid. v. U.S. Sports Specialty, 270 P.3d 464, 468 (Utah 2012) (citation omitted) ("[A] claim of unjust enrichment cannot arise where there is an express contract governing the 'subject matter' of a dispute."); Knight v. Post, 748 P.2d 1097, 1099 (Utah Ct. App. 1988) (citations omitted) ("As a

11

general rule, one must first exhaust his legal remedies before he may recover on the basis of the equitable doctrine of quantum meruit."); Thatcher v. Lang, 462 P.3d 397, 407 (Utah Ct. App. 2020) (quoting Mann v. American W. Life Ins. Co., 586 P.2d 461, 465 (Utah 1978)) ("Recovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation.").  The Plaintiffs' claims for unjust enrichment, quantum meruit, and breach of implied contract/quasi-contract are accordingly dismissed.

## IV.   The Plaintiffs' claim for declaratory judgment is duplicative.

The Plaintiffs seek a declaratory judgment that the Services Agreement and other associated agreements are void.  (Am. Compl. ¶ 56.)  For support, the Plaintiffs offer two justifications: 1) that the contract is void because of fraud and misrepresentation, and 2) that the contract has ceased to exist because of a failure of consideration.  (Id. ¶¶ 57–58.)  For the reasons stated below, the court is not persuaded that a declaratory judgment is appropriate or necessary.

The Plaintiffs' arguments based on fraud fail to justify a declaratory judgment that the contract is void.  A plaintiff bringing a claim for fraud or fraudulent misrepresentation under Utah law must allege facts supporting the nine elements of such a claim:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.

Chappell v. Skywest Airlines, Inc., Case No. 4:21-cv-00083-DN-PK, 2021 WL 5882256, at *1 (D. Utah Dec. 13, 2021).  And Federal Rule of Civil Procedure 9(b) requires "a plaintiff to identify the time, place, and content of each allegedly fraudulent representation or omission, to

identify the particular defendant responsible for it, and to identify the consequences thereof." Karacand v. Edwards, 53 F. Supp. 2d 1236, 1241 (D. Utah 1999) (citation omitted).

The Plaintiffs have not sufficiently pled fraudulent misrepresentation under Rule 9(b). The Plaintiffs fail to allege the "time, place, and content" of the purported misrepresentations about the software's functionality. See id. The Plaintiffs have also failed to plead reliance with particularity. See Parrish v. Arvest Bank, 717 F. App'x 756, 761–62 (10th Cir. 2017) (holding that "broad allegations regarding … reliance" are insufficient to satisfy Rule 9(b)). And the Plaintiffs have not sufficiently alleged facts plausibly suggesting that Solutionreach had knowledge that the software would malfunction.

For a fraudulent nondisclosure claim under Utah law, "a plaintiff must prove by clear and convincing evidence that (1) the defendant had a legal duty to communicate information, (2) the defendant knew of the information he failed to disclose, and (3) the nondisclosed information was material." Jensen v. Cannon, 473 P.3d 637, 642 (Utah Ct. App. 2020) (citation omitted).

The Plaintiffs argue that the Defendant had a duty to disclose stemming from the affirmative statements it made about the renewal and operation of the software. But as noted above, the Plaintiffs have not made plausible allegations that the Defendant knowingly misled them through these statements. Because the requirements for fraudulent misrepresentation and fraudulent nondisclosure are not satisfied, the court declines to issue a declaratory judgment voiding the Sales Agreement and its associated contracts. In any event, these arguments are merely a repackaged version of the Plaintiffs' claims for negligent and fraudulent misrepresentation and, as discussed above, are barred by the economic loss rule.

Turning to the Plaintiffs' second argument, "[f]ailure of consideration [as opposed to lack of consideration] exists wherever one who has either given or promised to give some

performance fails without his fault to receive in some material respect the agreed exchange for that performance." Aquagen Int'l, Inc. v. Calrae Trust, 972 P.2d 411, 414 (Utah 1998) (quoting Copper State Leasing Co. v. Blacker Appliance & Furniture Co., 770 P.2d 88, 91 (Utah 1988)). Utah courts have held that "[e]vidence of failure of consideration does not vary or alter the terms of a contract; it attacks the very existence of the contract for the purpose of proving it unenforceable." Id. (quoting Nielsen v. MFT Leasing, 656 P.2d 454, 456 (Utah 1982)).

Utah courts typically find failure of consideration when a party has materially or entirely failed to provide the agreed upon consideration. For instance, in Aquagen, the court found that there was failure of consideration because none of the promised payments were made, and these payments were "the only obligation required of him in the contract." 972 P.2d at 414. In Nielsen, the court found that there was failure of consideration when the incorrect equipment was delivered. 656 P.2d at 456–57. And in FMA Financial Corp., the court found that there was failure of consideration when a silo was not constructed by the agreed upon time. FMA Fin. Corp. v. Hansen Dairy, Inc., 617 P.2d 327, 330 (Utah 1980).

But as these cases illustrate, failure of consideration is usually raised as an affirmative defense excusing performance. While these cases do not suggest that failure of consideration may only be raised as a defense, the Plaintiffs' request to void the contract merely allows them to seek damages based on the payments the Plaintiffs made to the Defendant for software that never worked. As discussed above, the court finds that the Plaintiffs have adequately pled facts that allow them to request that measure of damages through rescission of the contract, thereby rendering their claim for declaratory judgment "entirely extraneous[.]" IHC Health Servs. Inc. v. ELAP Servs., LLC, No 2:17-cv-1245-JNP, 2019 WL 4758032, at *6 (D. Utah Sept. 30, 2019). Given Utah law on rescission, the court finds no meaningful difference between the evidence the

Plaintiffs must present to void a contract for failure of consideration and the factors the court must consider to rescind a contract for material breach. Accordingly, the court finds that a "declaratory judgment would add nothing to the equation" and exercises its discretion to dismiss this claim. Id.

In the alternative, the Plaintiffs ask the court to find that the limitation of liability provision, if it applies at all, "allows for recovery of three months payments for each and every day and/or customer for which Defendant did not provide Plaintiffs with the promised software." (See Am. Compl. ¶ 59.) The court finds this interpretation to be unreasonable and declines to adopt it. See First Am. Title Ins. Co. v. J.B. Ranch, Inc., 966 P.2d 834, 837 (Utah 1998) (finding that a proposed alternative interpretation of a contract must be "plausible and reasonable in light of the language used").

## V.    The amount in controversy requirement is satisfied.

A plaintiff bringing a claim in federal court under diversity jurisdiction must prove both complete diversity between the parties and an amount in controversy in excess of $75,000. 28 U.S.C. § 1332. If either element is lacking, federal courts lack jurisdiction to hear the dispute. "Because the jurisdiction of federal courts is limited, there is a presumption against [their] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005) (citation omitted). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). For the court to dismiss a case for failing to meet the amount in controversy requirement, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." Miera v. Dairyland Ins. Co., 143 F.3d 1337, 1340 (10th Cir. 1998) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)).

The Defendant argues that the limitation of liability provision in the End-User License Agreement, which is incorporated into the Services Agreement, makes it impossible to meet the amount in controversy requirement.  The provision states:

> OUR SOLE AND MAXIMUM LIABILITY, AND YOUR SOLE AND EXCLUSIVE REMEDY FOR ANY CLAIMS WHATSOEVER, WHETHER BASED ON BREACH OF CONTRACT, BREACH OF WARRANTY, TORT, INCLUDING NEGLIGENCE, PRODUCT LIABILITY OR OTHERWISE, SHALL BE LIMITED TO THE AMOUNT YOU PAID FOR THE SERVICES WITHIN THE THREE (3) MONTHS IMMEDIATELY PRECEDING A CLAIM IN WHICH WE ARE LIABLE TO YOU FOR SUCH CLAIM.

(End-User License Agreement § 5, ECF No. 24-1 at 3.)  Under the Services Agreement, Taylormade agreed to pay a monthly license fee of $379 and a one-time activation fee of $399.  (Services Agreement § 2, ECF No. 24-1 at 2.)  The 2019 Agreement added a monthly fee of $79, beginning in the second month.  (2019 Agreement § 2, ECF No. 24-1 at 7.)  Because the total amount Taylormade paid for the services in the three months preceding the claim cannot exceed $75,000, the Defendant argues that the limitation of liability provision prevents the court from exercising jurisdiction to hear this case.

But while parties are permitted to limit liability for ordinary negligence, Utah courts do not enforce liability releases that prevent a plaintiff from bringing claims for gross negligence. See Ipsen v. Diamond Tree Experts, Inc., 466 P.3d 190, 196 (Utah 2020) (citation omitted) ("On public policy grounds, we have disallowed liability waivers for grossly negligent acts while permitting those that release liability stemming from negligent acts.").  The limitation of liability provision in the End-User License Agreement limits recovery "for any claims whatsoever … including negligence."  (End-User License Agreement § 5, ECF 24-1 at 3.)  To the extent this provision limits recovery for gross negligence, it is unenforceable.  See Xat.com Ltd., 2017 WL 449652, at *8 ("Paragraph 11 could be interpreted as a limitation of liability provision that

16

allows [the Defendant] to engage in grossly negligent or willful conduct while leaving [the Plaintiff] with nominal retribution.  Such liability waivers are generally unenforceable."). Taking the facts in the light most favorable to the Plaintiffs, the court finds the Plaintiffs have plausibly alleged that the Defendants' actions amounted to gross negligence and that the limitation of liability provision is not enforceable.  Accordingly, it is not a legal certainty that the amount in controversy requirement cannot be met, and the court therefore finds that it has jurisdiction to hear this case.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.    The Defendant's Motion to Dismiss (ECF No. 27) is GRANTED IN PART and DENIED IN PART.

2.    The court DENIES the motion to the extent the Defendant argues that the court lacks jurisdiction.  The court finds that it may properly exercise diversity jurisdiction over this matter.

3.    The court GRANTS the motion as it relates to all but the Plaintiffs' Fifth Cause of Action for breach of contract.  The Plaintiffs' claims for fraudulent misrepresentation, fraud by nondisclosure, negligent misrepresentation, declaratory judgment, unjust enrichment, quantum meruit, breach of an implied contract/quasi contract, and negligence are DISMISSED.

DATED this 31st day of March, 2026.

BY THE COURT:

_Tena Campbell_
Tena Campbell
United States District Judge

17